# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| MANDY NIELSEN, | CASE NO. 4:24-CV-00579 |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| SEVEN SEVENTEEN CREDIT UNION, INC., et al., | **ORDER (Resolving ECF Doc. 82)** |
| Defendants. | |

Pending before the Court is the Joint Motion for Sanctions filed by Defendants Angelo LoCastro ("Mr. LoCastro") and 717 Credit Union, Inc. ("717 Credit Union") (collectively "Defendants") on May 23, 2025, which asks the Court to impose sanctions against Plaintiff Mandy Nielsen ("Plaintiff" or "Ms. Nielsen") based on her alleged non-compliance with the Court's discovery orders, failure to produce relevant documents, and spoliation of evidence. (ECF Doc. 82 ("Motion").)  The Motion was referred to the undersigned for a ruling[1] (ECF Doc. 80) and is now briefed and ripe for review (ECF Doc. 83; ECF Doc. 88).

For the reasons set forth below, the undersigned finds Plaintiff has repeatedly failed to comply with Court orders regarding her discovery obligations and has also improperly failed to preserve electronically stored information ("ESI") in anticipation of litigation.  Accordingly, the Court imposes sanctions under Federal Rule of Civil Procedure 37, as specified herein.

---

[1] A district judge may "designate a magistrate judge to hear and determine any pretrial matter pending before the court" except for specifically enumerated motions.  See 28 U.S.C. § 636(b)(1)(A).  And "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge," that magistrate judge has authority to issue an order resolving the matter.  See Fed. R. Civ. P. 72(a).  Since motions for sanctions are not exempted from the list of pretrial matters that may be heard and determined by a magistrate judge under 28 U.S.C. § 636(b)(1)(A) and the sanctions imposed herein are not dispositive of any claim or defense in the matter, the undersigned enters an Order under 28 U.S.C. 636(b)(1)(A) rather than a Report and Recommendation under 28 U.S.C. 636(b)(1)(B).

## I.     Procedural History

Plaintiff seeks to prosecute the following claims against Defendants: discrimination on the basis of sex in violation of 29 U.S.C. § 2000e, et seq. (Count I); hostile work environment in violation of Title VII (Count II); and discrimination on the basis of sex in violation of O.R.C. § 4112 (Count IV).[2]  (ECF Doc. 1; *see also* ECF Doc. 89.)  During the discovery period ending on January 31, 2025 (ECF Doc. 19), Defendants repeatedly sought court intervention to resolve discovery disputes relating to their requests for production of documents (*see* ECF Docs. 29, 30, 31, 32, 36, 37, 43, 44, 46, 51).  The Court entered the following orders to resolve those discovery disputes in December 2024 and February 2025.

First, on December 5, 2024, the Court ordered Plaintiff to produce certain documents that were responsive to Defendants' outstanding discovery requests, and to bring certain devices to an upcoming deposition.[3]  (ECF Doc. 37 ("December 5 Order").)  Relevant to the present Motion, the Court ordered Plaintiff to produce, no later than December 13, 2024:

(2)(b):  all documents not yet produced which concern Plaintiff's communications with potential employers, job search efforts, offers of employment, job descriptions, and income and benefits of subsequent employment, including but not limited to the reconstructed list of Plaintiff's job search efforts that Plaintiff has agreed to compile;

(2)(c):  native downloaded copies of all communications between Plaintiff and Defendant LoCastro, from 2010 to present, located in Plaintiff's Instagram, Facebook, Facebook Messenger, and Snapchat accounts;

---

[2] The Complaint alleges one additional claim against Defendants—retaliation in violation of Title VII (Count III)—and two additional claims against Defendant LoCastro—assault and battery (Count V) and intentional infliction of emotional distress (Count VI).  (ECF Doc. 1, pp. 5-6, 8.)  On August 1, 2024, the Court granted Plaintiff's motion to dismiss Counts V and VI.  (ECF Doc. 25.)  On February 24, 2025, Plaintiff filed a notice under Federal Rule of Civil Procedure 41(a), purporting to dismiss Count III with prejudice.  (ECF Doc. 57.)

[3] The December 5 Order was entered following a telephone conference attended by the undersigned and counsel for the parties.  (ECF Doc. 37.)  Plaintiff was present for part of the telephone conference.  (*Id.*)

(2)(d): all posts or communications mentioning Defendant LoCastro, from 2018 to the present, from Plaintiff's Instagram, Facebook, Facebook Messenger, and Snapchat accounts; and

(2)(e): native format copies of specified photographs of Plaintiff, which were previously produced by Plaintiff only as copies or screenshots.

(*Id*.)  The Court also ordered Plaintiff to bring the following devices to her upcoming deposition on December 17, 2024:

(3)(a): a Samsung phone with no provider service that was discussed by the parties, which Plaintiff had indicated was broken; and

(3)(b): her current operative cellular phone.

(*Id*. at p. 2.)  The Court further ordered Plaintiff to allow Defense counsel to examine the phones at the deposition, in the presence of Plaintiff and her attorney, but limited Defense counsel's examination of Plaintiff's current operative phone to the review of text messages between Plaintiff and Defendant LoCastro and/or Plaintiff and Sam Katsares.  (*Id*.)

Despite the Court's order, Plaintiff did not bring her current operative cellular phone to her December 17, 2024 deposition, explaining: "I didn't think I needed it."  (ECF Doc. 42-1 ("Dec. Nielsen Depo."), 12:25-13:4.)  She also testified at her deposition that she told coworkers Samantha Ford, Brittany Georgalas, Keri Davis, and Tonya Blair about her allegations of sexual harassment by Mr. LoCastro, and had "proof" in the form of "[t]ext messages" and "phone calls."  (Dec. Nielsen Depo., 79:14-80:18.)  She said she had not produced documentation of that proof because she "ha[d]en't been asked for [it]."  (*Id*. at 80:19-81:4.)  Her counsel agreed to produce the described evidence.  (*Id*. at 81:6.)  When Plaintiff was later asked whether she had produced all documentation of her communications with others about her allegations against Mr. LoCastro, consistent with Defendants' discovery requests and the Court's order, she answered:

I believe so, but I haven't really had the time to go through all of the messages to look.  I started doing that a little bit more and found some things that I sent to Irene from Samantha.  And I produced those.  I will continue to do so, absolutely.

3

(*Id.* at 151:13-21.) When asked to confirm that she "did not provide everything that [she] had

that was responsive to [Defendants'] discovery requests and to the Court's order requiring [her]

to provide those documents," Plaintiff answered:

> Well, it's a long, long period of time. So I'm doing my best to get everything
> presented. But when you have four children, two grandchildren, it can be difficult
> to find time to go through your phone and search certain words and phrases to find
> things to be able to produce them on time. I'm doing my best.

(*Id.* at 151:22-152:11.) When asked if she had additional documentation, she answered "I do,"

explaining "every text message that was ever sent, I have in my phone." (*Id.* at 152:12-24.)

Plaintiff attended a second deposition on January 28, 2025. (ECF Doc. 69-3 ("Jan.

Nielsen Depo.").) When asked if she had texted or communicated on social media with Matt

Toro regarding her allegations against Mr. LoCastro, she answered as follows:

> A.   I would have to look through and see, but I'm sure there was something.
>
> Q.   And you haven't looked yet?
>
> A.   No.
>
> Q.   Okay. Do you remember when we had your deposition earlier and you said
>      that you had communications with other people about Mr. Locastro and about
>      your allegations, and you said that you would provide those to your attorney.
>
> A.   Uh-huh.
>
> Q.   And you haven't done that?
>
> A.   I honestly haven't had the time - -
>
> Q.   Okay.
>
> A.   - - to go through them.
>
> Q.   You haven't looked through anything since your last deposition to see if you
>      have any of the documents that were responsive to our request?
>
> A.     No.

(Jan. Nielsen Depo., 13:20-14:20.)  When asked about written communications with others discussing sexual harassment by Mr. LoCastro, she said she had reviewed her communications with Tonya Blair, Keri Davis, and Brittany Georgalas and either produced the communications or confirmed that there were no communications.  (*Id.* at 32:6-34:10.)  But she said she "would have to look and see" as to Mr. Deniro, since she hadn't looked yet.  (*Id.* at 32:14-24.)

Plaintiff was also asked about evidence relating to her job searches at the deposition. When defense counsel asked if she recalled that she was supposed to provide any documentation she had regarding her job searches, she answered: "No."  (*Id.* at 40:21-23.)  When asked if she had given anything to her attorney other than a three-page printout from Indeed, she answered: "No."  (*Id.* at 41:5-13.)  When asked if she had brought materials to the deposition to show her continued job search, she answered as follows:

A.  I can log into my Gmail when we're done and I can print more for her if that's what you guys need.

Q.  And you haven's done that to date?

A.  Well, since the last time we were here, I've applied for some, so I wouldn't have those printed out yet, no.

Q.  But - -

A.  I do have four children and two grandchildren.  My life is pretty busy.

Q.  Right.

A.  So I - - and if I'm looking for jobs and applying for jobs, and then I'm also trying to do things for this case, it's - - it's a lot.

Q.  So prior to - -

A.  I'm doing my best.

Q.  As of the time of your last deposition, you had produced three pages, like I stated, of the Indeed information.  Do you have anything else to establish your job search other than those three pages?

A.  That I've provided to Irene?

Q.   That you can provide.

A.   Yes.

Q.   So you have more documentation to show your job search efforts as of the last deposition, but you have not yet provided them?

A.   Correct.

(*Id.* at 41:14-42:17.)

Following additional discussions and court interventions (*see* ECF Docs. 43, 44, 46), the Court issued a second order on February 12, 2025 (ECF Doc. 51 ("February 12 Order")).[4]  In the February 12 Order, the Court found Plaintiff had failed to comply with Paragraphs (2)(b), (2)(c), and (2)(d) of the December 5 Order, but permitted her to "attempt to cure her failure" by producing the following materials no later than February 14, 2025:

- all documents not yet produced which concern Plaintiff's communications with potential employers, job search efforts, offers of employment, job descriptions, and income and benefits of subsequent employment, including but not limited to the reconstructed list of Plaintiff's job search efforts that Plaintiff has agreed to compile [(2)(b)];

- native downloaded copies of all communications between Plaintiff and Defendant LoCastro, from 2010 to present, located in Plaintiff's Instagram, Facebook, Facebook Messenger, and Snapchat accounts [(2)(c)]; and

- all posts or communications mentioning Defendant LoCastro, from 2018 to the present, from Plaintiff's Instagram, Facebook, Facebook Messenger, and Snapchat accounts [(2)(d)].

(*Id.*)  The Court also ordered Plaintiff to produce the following additional documents and/or information by February 14, 2025:

- produce native format copies of specified photographs that were previously produced only as copies or screenshots <u>or</u> confirm that the format in which

---

[4] The February 12 Order was entered following a February 10, 2025 telephone conference attended by the undersigned, Plaintiff, and counsel for the parties.  (ECF Doc. 51.)

the photographs were produced is the original format for the photographs in Plaintiff's possession;[5]

- produce the following categories of text messages, retrieved from Plaintiff's current cellular phone: (a) text messages in which Defendant LoCastro is a party to the communication; (b) text messages in which Samantha Katsares is a party to the communication; and (c) text messages that refer to Defendant LoCastro;

- any of the photographs that Plaintiff testified she previously shared with Defendant LoCastro but later deleted and/or any evidence of when such photographs were deleted.

(*Id.*)  The Court advised counsel and Plaintiff during the February 10, 2025 telephone conference, and again in the February 12 Order, that "the Court may issue 'further just orders' in response to any failure to comply with the Court's discovery orders pursuant to Fed R. Civ. P. 37(b)(2)," which might include but were not limited to:

- directing that facts be taken as established;

- prohibiting the disobedient party from introducing designated matters into evidence;

- striking pleadings in whole or in part;

- dismissing an action in whole or in part;

- a finding of being in contempt of court; and/or

- ordering a "disobedient party, the attorney advising the party, or both to pay reasonable expenses, including attorney fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

(*Id.*)

On February 14, 2025, Plaintiff filed a Response to Minutes of Proceeding and Order discussing her compliance with the requirements of the February 12 Order.  (ECF Doc. 56.)  In a

---

[5] As reflected in the February 12 Order, Plaintiff agreed to ask her IT vendor "Mr. PC" to attempt to locate the specified photographs in their native format.  (ECF Doc. 51, p. 2 n. 3.)

Joint Status Report filed on February 26, 2025, Defendants reported their position that Plaintiff

had failed to cure her violations of the December 5 Order and had also failed to adhere to the

February 12 Order, and requested leave to file a motion for sanctions.  (ECF Doc. 62.)  Leave

was granted (ECF Doc. 80; ECF Doc. 81), and Defendants filed this Motion (ECF Doc. 82).

## II.     Defendants' Joint Motion for Sanctions

Defendants argue that sanctions are appropriate because Plaintiff failed to comply with

the Court's orders to produce the following categories of documents: (1) correspondence with

potential employers (ECF Doc. 82-1, pp. 6-7); (2) social media communications with or about

Mr. LoCastro (*id.* at pp. 7-8); (3) photographs in their native format (*id.* at pp. 8-9); (4) complete

sets of text messages between Plaintiff and others regarding Mr. LoCastro (*id.* at pp. 9-11); and

(5) photographs Plaintiff previously shared with Mr. LoCastro (*id.* at pp. 11-13).  As to the fifth

category, Defendants also argue Plaintiff should be sanctioned for spoliation of evidence.  (*Id.*)

Defendants assert that the requested documents are necessary for them to defend against

Plaintiff's claims, and request that this Court issue the following sanctions:

(1)     dismiss Plaintiff's claim for lost wages;

(2)     prohibit Plaintiff from introducing testimony or other evidence that she complained
        to others, in writing or via social media, regarding Mr. LoCastro, while she was
        employed at 717 Credit Union;

(3)     exclude all screenshots of social media exchanges (text and photographs) and
        provocative/ sexual photographs exchanged between Plaintiff and Mr. LoCastro
        which were not provided in their native format;

(4)     award reasonable attorney fees incurred by Defendants in repeatedly pursuing these
        documents; and

(5)     any other sanction this Court deems proper.

(*Id*. at pp. 3, 13.)

8

In a brief filed over three weeks after the filing deadline (ECF Doc. 83),[6] Plaintiff

responds that she made "continuous and diligent efforts to comply and cooperate through this

litigation," "engaged in active communication, made substantial productions, and consistently

supplemented her responses," and "[a]t no point . . . intentionally withh[e]ld discoverable

information or act[ed] in bad faith." (ECF Doc. 83-1, p. 2.)  She also provides specific responses

regarding the documents that Defendants assert she failed to produce.[7]  (*Id*. at pp. 2-6.)

### III.    Law & Analysis

**A.    Legal Framework for Imposition of Sanctions for Discovery Violations and Spoliation of Evidence**

"The Federal Rules of Civil Procedure set forth the discovery obligations of parties and

their attorneys, and authorize federal courts to impose sanctions on those participants who fail to

meet these obligations." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (N.D. Ohio 2013).[8]

When a party has failed to obey a court order to produce or permit discovery, the district court

may impose sanctions under Rule 37(b)(2), including:

> (i) directing that the matters embraced in the order or other designated facts be taken
> as established for purposes of the action, as the prevailing party claims; (ii)
> prohibiting the  disobedient party from supporting or opposing designated claims
> or defenses, or from introducing designated matters in evidence; (iii) striking
> pleadings in whole or in part; (iv) staying further proceedings until the order is
> obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering
> a default judgment against the disobedient party; or (vii) treating as contempt of

---

[6] The Court noted that Plaintiff's request to file her response in opposition "three weeks after the due date for filing the opposition" was not granted lightly.  (Non-document order dated August 1, 2025.)  But the Court found the opportunity to be heard on the issue of sanctions weighed in favor of granting the belated request.  (*Id.*)

[7] Plaintiff also attempts to shield herself from sanctions by arguing that Defendants have engaged in discovery misconduct.  (*Id.* at pp. 6-7.)  However, Defendants' conduct is not at issue.  The Motion before the Court relates to Plaintiff's alleged failures to comply with her discovery obligations and court orders and Plaintiff neither sought nor obtained leave to pursue sanctions against Defendants for alleged discovery violations.  Thus, Plaintiff's arguments relating to Defendants' alleged misconduct are not properly before this Court and are not considered herein.

[8] While a party may move for sanctions, district courts may also impose sanctions sua sponte. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n. 8 (1991).

court the failure to obey any order except an order to submit to a physical or mental examination.

*See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). In selecting a sanction, the court "may properly consider both punishment and deterrence." *Laukus*, 292 F.R.D. at 500 (citation omitted); *see also Peltz v. Moretti*, 292 F. App'x 475, 478 (6th Cir. 2008) (noting dismissal has been upheld as a sanction because it punishes the offending party and deters similar litigants from future misconduct). When a party has failed to comply with a discovery order, the rule also provides that the court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless* the failure was substantially justified or other circumstances make an award of expenses unjust."[9] *See* Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

In reviewing sanctions ordered under Rule 37, the Sixth Circuit asks four questions:

(1) Did the party act in bad faith? (2) Was the opposing party prejudiced? (3) Did the court give adequate warning? and (4) Could less drastic sanctions have ensured compliance?

*Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) (citation omitted); *see Peltz*, 292 F. App'x at 479 (outlining the court's "four factor test when reviewing a decision by a district court to impose sanctions under Rule 37"). Under this four factor test, the sanctioned party bears "[t]he burden to prove that the failure to comply with discovery obligations was the result of inability and not due to willfulness, bad faith or fault." *Laukus*, 292 F.R.D. at 500 (citation omitted).

Courts may also impose Rule 37 sanctions in certain situations where a party has failed to preserve ESI evidence, as follows:

---

[9] Courts also retain inherent power to impose attorney fees as a sanction for bad faith conduct during litigation. *See Chambers*, 501 U.S. at 50. However, when "bad-faith conduct . . . could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.*

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)    upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)    only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). In assessing whether, and when, a duty to preserve evidence exists under Rule 37(e), courts apply the common-law "duty to preserve relevant information when litigation is reasonably foreseeable." Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. In the Sixth Circuit, "a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). When assessing whether a party has suffered prejudice under Rule 37(e)(1), the court's evaluation "necessarily includes an evaluation of the [lost] information's importance in the litigation." Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. "District courts have broad discretion to craft proper sanctions for the spoliation of evidence." *Adkins v. Wolever*, 692 F.3d 499, 503 (6th Cir. 2012).

Beyond the authority to impose sanctions under Rule 37, district courts also have "the power to impose civil or criminal sanctions on an attorney who fails to comply with a lawful,

specific court order." *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994) (citing 18 U.S.C. § 401(3)). As set forth in 18 U.S.C. § 401(3), a federal district court has:

> power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as * * * (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Whether the court's authority is based on its inherent power to address litigation misconduct or its authority under 18 U.S.C. § 401(3), "violation of a definite and specific court order must be shown by clear and convincing evidence before sanctions can be imposed for violation of the order." *Grace v. Center for Auto Safety*, 72 F.3d 1236, 1243 (6th Cir. 1996).

For the reasons set forth below, the undersigned concludes that sanctions are warranted against Plaintiff under Fed. R. Civ. P. 37(b)(2)(A) and Fed. R. Civ. P. 37(e).

## B.     Failure to Produce Correspondence with Potential Employers

Defendants' first request for sanctions pertains to Paragraph (2)(b) of the December 5 Order, which ordered Plaintiff to produce by December 13, 2024, all documents not yet produced that concerned her job search efforts "including but not limited to the reconstructed list of Plaintiff's job search efforts that Plaintiff has agreed to compile." (ECF Doc. 82-1, p. 6; *see* ECF Doc. 37.) At her January 28, 2025 deposition, over a month after that deadline, Plaintiff testified that she did not recall that she was supposed to provide documentation regarding her job searches and had not given her attorney any documents beyond a three-page printout that her attorney had previously produced. (Jan. Nielsen Depo., 40:21-23, 41:5-13.) She testified that she had additional documentation to show her job search efforts but had not yet provided it, explaining that she was "pretty busy" and was doing her best. (*Id.* at 41:14-42:17.)

On February 6, 2025, Defendants reported that Plaintiff had previously produced a three-page "Indeed My Jobs" printout from December 2024, and had produced on that same day

12

screenshots or printouts from Zip Recruiter and Indeed from August 2024 to the present; she still had not produced the reconstructed list of job search efforts required by the December 5 Order, and had produced no documents relating to her job search efforts from November 2022 through July 2024.  (ECF Doc. 46, pp. 1-2.)  Plaintiff responded that she had no other readily available documents to produce but would double check to see what was missing.  (*Id.*)  Following a February 10 telephone conference, the Court found Plaintiff had failed to comply with Paragraph (2)(b) of the December 5 Order, but permitted her to "attempt to cure her failure" by fully producing the responsive documents by February 14, 2025.  (ECF Doc. 51, p. 1.)  On February 14, 2025, Plaintiff forwarded a one-page reconstructed list of her job search efforts and her resume to Defendants, stating that all other documents responsive to Paragraph (2)(b) had already been produced.  (ECF Doc. 56, pp. 1-2; *see* ECF Doc. 82-9 (reconstructed job list).)

In the present Motion, Defendants ask the Court to impose the extreme sanction of "preclud[ing] Plaintiff from making a claim for lost job opportunities or lost wages" because Plaintiff's production relating to her job searches did not include "any correspondence with any of the companies identified" in her reconstructed list of job search efforts.  (ECF Doc. 82-1, pp. 6-7.)  In response, Plaintiff asserts that "certain email confirmations or attachments were no longer accessible due to third-party account restrictions and the passage of time," but that she disclosed technical and practical constraints to defense counsel, provided over seven hours of deposition testimony, and acted with "diligence, transparency, diligence, and willingness to cooperate at every stage."  (ECF Doc. 83-1, p. 3.)  She also asserts there is no showing of actual prejudice to support the "drastic request to preclude Plaintiff's wage loss claim."  (*Id.*)

The undersigned now turns to the Sixth Circuit's four factor test to assess whether the extreme sanction of dismissing the lost wage claim is warranted.  *See Prime Rate Premium Fin.*

*Corp.*, 930 F.3d at 769; *Peltz*, 292 F. App'x at 479. Considering the first factor—whether Plaintiff acted in bad faith—the Court is cognizant that Plaintiff bears the burden to prove that any failure to comply with a discovery order "was the result of inability and not due to willfulness, bad faith or fault." *Laukus*, 292 F.R.D. at 500. Here, the evidence clearly shows that Plaintiff failed to comply with the Court's discovery orders. After being ordered to produce responsive documents, including a "reconstructed list" of job search efforts that she explicitly agreed to compile, by December 13, 2024 (ECF Doc. 37), Plaintiff nevertheless testified in January 2025 that she did not recall that she was supposed to provide documentation of her job searches, and had not looked for or provided additional documents (Jan. Nielsen Depo., 40:21-23, 41:5-42:17). Her explanation was that she was "pretty busy." (*Id.*) She later produced some Zip Recruiter and Indeed printouts from August 2024 to February 2025 shortly before a joint status report was filed in February 2025 (ECF Doc. 46, pp. 1-2), and finally produced a one page reconstructed list of her job search efforts and resume on the final deadline for her to attempt to cure her failure to comply with the December 5 Order (ECF Docs. 51, 56).

This evidence shows not only that Plaintiff failed to comply with this Court's discovery orders, but also that she has failed to meet her burden to show that the failure "was the result of inability" rather than willfulness, bad faith, or fault. Her testimony reflects that she was aware of responsive documents, but chose not to make time to retrieve them. Plaintiff's repeated failure to comply with explicit court orders to produce specific documents relating to her job search without a good excuse supports a finding that she acted in bad faith. This is particularly true given Plaintiff's extensive pattern of noncompliance and delay throughout this litigation. *See Prime Rate Premium Fin. Corp.*, 930 F.3d at 769 (upholding a bad faith finding where a party

"repeatedly ignored court orders without excuse," "presented dubious documentation," and acted within "a broader 'pattern of delay'").

Turning to the second question—whether Defendants were prejudiced by Plaintiff's failure to comply with the Court's order to produce the job-related records—Defendants argue that the lack of documentation regarding Plaintiff's job searches "puts Defendants at an extreme disadvantage in their ability to defend against Plaintiff's damages claim." (ECF Doc. 82-1, p. 7.) The Court agrees that Defendants' ability to defend against allegations of lost job opportunities and lost wages is diminished if Plaintiff is permitted to seek damages based on her own self-serving testimony despite withholding relevant documentary evidence.

As to the third question—whether the Court gave adequate warning of the potential that discovery sanctions might include dismissal of the lost wage claim—this Court explicitly advised Plaintiff and her counsel at the February 10, 2025 telephone conference and in the February 12 Order that sanctions for noncompliance with this Court's discovery orders could include dismissal of the action, in whole or in part. (ECF Doc. 51, p. 2.)

The final question that this Court must consider is whether less drastic sanctions would be sufficient to ensure Plaintiff's compliance. *See Prime Rate Premium Fin. Corp.,* 930 F.3d at 769. Here, the evidence shows that Plaintiff and her counsel showed disrespect for both Defendants and this Court when they disregarded Plaintiff's discovery obligations, repeatedly missed production deadlines, even those ordered by the Court, and ultimately produced very limited documentation to support allegations that she has diligently searched for new jobs since 2022. According to Defendants, the only documents Plaintiff provided to substantiate her job search includes printouts from Indeed and Zip Recruiter from August 2024 through early-2025 and a one-page reconstructed list of job search efforts since 2022. Nevertheless, the Court notes

that Defendants do not similarly assert that Plaintiff failed to produce documentation regarding the income and benefits she earned from her actual employment during the same period.

For the reasons set forth above, the Court concludes that sanctions are appropriate to address Plaintiff's noncompliance with Paragraph (2)(b) of the December 5 Order and her inadequate efforts to cure the noncompliance after the February 12 Order, but that sanctions less drastic than dismissal of the lost wage claim are sufficient to address Plaintiff's noncompliance. Accordingly, the Court PROHIBITS the introduction of evidence (including testimony) regarding Plaintiff's job searches in support of her lost wages claim, *except for* job searches that are substantiated by documentary evidence, such as the Indeed or Zip Recuter printouts or other evidence relating to Plaintiff's confirmed employment.  Plaintiff's reconstructed job search list (ECF Doc. 82-9) is not sufficient evidence to substantiate any job searches.

## C.   Failure to Produce Social Media Communications with or about Mr. LoCastro

Defendants' second request for sanctions pertains to Paragraphs (2)(c) and (2)(d) of the December 5 Order, in which the Court ordered Plaintiff to produce, by December 13, 2024, native downloaded copies of:

- all communications between Plaintiff and Defendant LoCastro, from 2010 to present, located in Plaintiff's Instagram, Facebook, Facebook Messenger, and Snapchat accounts; and

- all posts or communications mentioning Defendant LoCastro, from 2018 to present, from Plaintiff's Instagram, Facebook, Facebook Messenger, and Snapchat accounts.

(ECF Doc. 37; *see* ECF Doc. 82-1, pp. 7-8.)  Despite this order, when asked about her text and social media communications with Matt Toro at her January 28, 2025 deposition, Plaintiff testified that she had not looked for them yet, explaining that she "honestly ha[d]n't had time . . . to go through them."  (Jan. Nielsen Depo.  13:20-14:20.)

16

As to Paragraph (2)(c), Defendants reported in the February 6, 2025 joint status report that Plaintiff had "produced some Facebook and Instagram communications between Plaintiff and LoCastro," but that counsel was unable to confirm whether Plaintiff had provided a complete download of her Facebook and Instagram communications with LoCastro.  (ECF Doc. 46, p. 2.) Plaintiff's counsel responded that Plaintiff had provided "all the documents she was able to download from her Facebook and Instagram accounts," offering the following additional explanation: "Her compute [sic] was for two days straight, but she could not access additional documents."  (*Id.*)  As to Paragraph (2)(d), Defendants reported in the February joint status report that no responsive documents were provided.  (*Id.* at p. 3.)  Plaintiff responded that she had "provided whatever communications she had that were readily available," noting she had retained IT firm "Mr. PC" to access text messages and communications regarding Mr. LoCastro on her cell phone.  (*Id.*)  Following the February 10 telephone conference, the Court found Plaintiff had failed to comply with Paragraphs (2)(c) and (2)(d) of the December 5 Order, but permitted her to "attempt to cure her failure" by producing responsive documents by February 14, 2025.  (ECF Doc. 51, p. 2.)  On February 14, Plaintiff reported that she had already produced all responsive documents, saying: "Despite her efforts and using Defendants' suggested method, Plaintiff cannot download the metadata that Defendants are demanding."  (ECF Doc. 56, p. 2.)

With respect to these discovery orders, Defendants ask the Court to sanction Plaintiff by: (1) excluding all screenshots of social media exchanges between Plaintiff and Mr. LoCastro that were not also provided in their native format; and (2) prohibit Plaintiff from presenting testimony or other evidence that she complained to others via social media regarding Mr. LoCastro while she was employed at 717 Credit Union.  (ECF Doc. 82-1, pp. 1, 13.)  In support, they note that Plaintiff did not produce any new social media communications between herself and Mr.

LoCastro following the Court's February 12 Order, and "has not produced a single social media communication with anyone else[] about Mr. LoCastro."  (*Id.* at p. 8.)  They also note that Plaintiff did not ask her IT expert to search her social media accounts "[d]espite verbal promises to the Court to do so."  (*Id.* (citing ECF Doc. 82-10 (Wolanzyk Report), ¶¶ 1.1 (noting purpose was to extract text messages and photos from cell phone), 4 (noting review was limited to text messages and did not include third-party messaging applications like Facebook Messenger).)

In opposition, Plaintiff claims that her "IT expert conducted a targeted, thorough extraction from all devices to which Plaintiff had access, and all resulting data was fully disclosed and produced to Defendants."  (ECF Doc. 83-1, p. 3.)  She also argues that she "no longer had access to certain accounts and passwords, which she clearly and repeatedly explained in her two depositions and during detailed discussions between December 2024 and February 2025."  (*Id.* at pp. 3-4.)  Within these constraints, Plaintiff asserts that she fully complied with her discovery obligations by "producing all social media materials in her possession, custody, or control" and that she offered to supplement her production "if additional technical solutions or recovery options became available."  (*Id.* at p. 4.)  She argues on this basis that she should not "be sanctioned for circumstances entirely beyond her control."  (*Id.*)

The Court begins with the first of the four factors to assess the requested sanctions— whether Plaintiff acted in bad faith.  First, the evidence clearly establishes that Plaintiff failed to comply with this Court's orders in Paragraphs (2)(c) and (2)(d) of the December 5 Order, and did not cure those deficiencies following the February 12 Order.  While she generally asserts that she "cannot" download native copies of the documents "[d]espite her efforts and using Defendants' suggested method" (ECF Doc. 56, p. 2) and no longer has "access to certain accounts and passwords" (ECF Doc. 83-1, pp. 3-4), she fails to specifically document: what steps she took to

access each account; for those accounts she was able to access, what steps she took to download the requested native files; to the extent she was able to download native files, what steps she took to confirm that the download files included all relevant files; to the extent she no longer has access to certain accounts, which accounts she lost access to and what steps she took to recover access; to the extent that she no longer has certain account passwords, which passwords she lost and what steps she took to recover those passwords.

While Plaintiff's counsel informally described Plaintiff's efforts and difficulties in seeking to obtain the requested files during the February 10, 2025 telephone conference, Plaintiff has not provided a formal, specific explanation of the factual basis for her broad assertion that she "cannot" produce the files. Further, while Plaintiff's counsel stated at the conference that she would ask the IT firm "Mr. PC" to obtain the outstanding information from Plaintiff's social media accounts, the IT report ultimately provided to Defendants clearly reflects that the inquiry was limited to text messages and pictures on a cellular phone, without any inquiry into the social media accounts. (*See* Wolanzyk Report, ¶¶ 1.1, 4.) Nevertheless, Plaintiff makes the misleading assertion in her opposition brief—specifically regarding the social media communications—that her "IT expert conducted a targeted, thorough extraction from all devices" and that "all resulting data was fully disclosed and produced to Defendants." (ECF Doc. 83-1, p. 3.)

In this context, the Court concludes that Plaintiff failed to comply with the Court's discovery orders and did not meet her burden to show that the failure resulted from inability rather than willfulness, bad faith, or fault. Plaintiff did not verify the completeness of the limited discovery she provided, failed to identify the steps she took in attempting to comply and/or the specific impediments that prevented her compliance, did not make use of technical resources to aid in her compliance, and apparently misrepresented to the Court both that she *would* and that

19

she *did* seek such technical assistance.  The evidence thus shows that Plaintiff's failure to comply with the relevant discovery orders was based on bad faith, not an inability to comply.

Turning to the second factor—whether Defendants were prejudiced by Plaintiff's failure to comply—Defendants argue that their ability to defend against Plaintiff's allegations that she complained to friends and coworkers about Mr. LoCastro's behavior is inhibited by Plaintiff's failure to produce this discovery.  (ECF Doc. 82-1, p. 2.)  The Court agrees that Defendants' ability to defend against self-serving testimony and curated "screen shots" recounting alleged communications on social media is undermined if Defendants are not given complete and verifiable documentation of the underlying social media communications.

As to the third factor—whether the Court gave adequate warning—the Court explicitly informed Plaintiff that sanctions for noncompliance under Rule 37 may include "prohibiting the disobedient party from introducing designated matters into evidence."  (ECF Doc. 51, p. 2.)

Turning to the final question—whether less drastic sanctions are sufficient to ensure compliance—the Court finds that the sanctions requested by Defendants are appropriate and no more drastic than necessary to address the conduct at issue.  Plaintiff argues that she should not be sanctioned for "circumstances entirely beyond her control," and that Defendants are attempting to impose "an unreasonable and legally unsupported standard of absolute perfection in discovery compliance."  (ECF Doc. 83-1, p. 4.)  On the contrary, despite many opportunities and the ability to obtain technical assistance in complying with the requests, Plaintiff failed to make reasonable attempts to comply, failed to document and explain the limited attempts she did make, and ultimately misrepresented some of the actions she purportedly took to comply.

For the reasons set forth above, the Court concludes that sanctions are appropriate to address Plaintiff's noncompliance with Paragraphs (2)(c) and (2)(d) of the December 5 order and

failure to attempt to cure that noncompliance after the February 12 Order. Accordingly, the Court PROHIBITS the introduction of evidence (including screen shots and testimony) concerning Plaintiff's social media posts or communications with or about Mr. LoCastro on Instagram, Facebook, Facebook Messenger, or Snapchat, *except for* social media posts or communications that Plaintiff produced to Defendants in their native format.

**D.     Failure to Produce Photographs in Their Native Format**

Defendants' third request for sanctions pertains to Paragraph (2)(e) of the December 5 Order, which ordered Plaintiff to produce "native format copies" of specified photographs that Plaintiff had previously produced "only as copies or screenshots" by December 13, 2024. (ECF Doc. 37; *see* ECF Doc. 82-1, pp. 8-9.) In a February 6, 2025 joint report, Defendants reported that Plaintiff had not produced any of the specified documents in their native format. (ECF Doc. 46, p. 2.) Plaintiff responded that she had produced the documents in the format in which she had them, but noted that she had hired an IT firm to access additional text messages and communications relating to Mr. LoCastro on her personal cell phone. (*Id.* at p. 3.)

Following the February 10, 2025 telephone conference, the Court did not explicitly find that Plaintiff had failed to comply with Paragraph (2)(e) of the December 5 Order; instead, the Court directed Plaintiff to "*either* produce native format copies" of the photographs "*or* confirm that the format in which the photographs have been produced is the original format for the photographs in Plaintiff's possession" by February 14, 2025. (ECF Doc. 51, p. 2 (emphasis added).) In so ordering, the Court noted that "Plaintiff ha[d] agreed to request that Mr. PC attempt to locate the specified photographs in their native format." (*Id.* at p. 2, n. 3.)

On February 14, 2025, Plaintiff represented that she had already produced the photos in the format in which she had them, but added that she was also forwarding "the report of her

forensic expert, Mark Wolanzyk, who examined Plaintiff's personal cellphone, and extracted nearly thousands of messages/photographs – dating back to 2010."  (ECF Doc. 56, p. 3.)  However, a review of the report does not reveal that Mr. Wolanzyk specifically searched for native photographs matching the specific screenshots at issue.  Instead, the report indicates that Mr. Wolanzyk performed a "review and analysis of text messages extracted from an iPhone device" with the purpose of extracting "text messages and photos mentioning 'Angelo' or 'Samantha' going back to 2010."  (ECF Doc. 82-10.)  Thus, while Plaintiff represents that she only has screen shots of the photographs, there is no evidence that any attempt was made—by Mr. Wolanzyk or otherwise—to ascertain whether she also possessed copies in their native form.

Considering Plaintiff's responses and the contents of Mr. Wolanzyk's report, Defendants argue that Plaintiff "did not make a good faith effort to produce any of the photographs in their native format."  (ECF Doc. 82-1, p. 8.)  Without the metadata from the native files, Defendants argue they are unable to ascertain whether the photos "were exchanged before [Plaintiff] was employed at 717 Credit Union . . . or during the time that she agreed her relationship with Mr. LoCastro was consensual."  (*Id.* at pp. 8-9.)  They therefore request that Plaintiff be "prohibited from producing any screenshot photographs which do not contain metadata."  (*Id.* at p. 9.)

Plaintiff argues in response that she "testified that some original files were deleted well before she anticipated any litigation, and for legitimate personal privacy reasons."[10]  (ECF Doc. 83-1, p. 4.)  She further asserts that "[h]er IT expert independently confirmed that no metadata or original files could be recovered from her devices, further substantiating her testimony."  (*Id.*)  Finally, she claims that she and her counsel "fully disclosed and explained these limitations to Defendants" during "numerous detailed calls in December 2024 and February 2025."  (*Id.*)

---

[10] Defendants' argument that the deletion of those photos amounted to spoliation of evidence, and warrants sanctions on that basis, will be addressed in Section III.F., *infra*.

Considering the first factor of the sanctions analysis—whether Plaintiff acted in bad faith—the Court observes that Plaintiff was not found to be in violation of Paragraph (2)(e) of the December 5 Order at the time the Court issued the February 12 Order.  Instead, she was instructed to *either* produce the native photographs *or* confirm that she had produced the only copies in her possession, based in part on her explicit representation that she would ask her IT expert to attempt to locate native copies of the relevant photographs.  (ECF Doc. 51, p. 2.)  Despite this opportunity to engage an expert to perform this inquiry months after the dispute was first raised and after the expiration of the fact discovery period, Mr. Wolanzyk's report does not reflect that he made the promised inquiry.  (ECF Doc. 82-10.)  Although Plaintiff broadly asserts that Mr. Wolanzyk has "independently confirmed that no metadata or original files could be recovered from her devices" (ECF Doc. 83-1, p. 4) that representation is not consistent with the report or any other evidence before this Court.  In this context, the Court finds Plaintiff has failed to comply with Paragraph 3 of the February 12 Order, and has not met her burden to show that her failure resulted from an inability to comply rather than willfulness, bad faith, or fault.  Instead, particularly in the context of Plaintiff's pattern of inaction, misrepresentation, and delay, the record supports a finding of bad faith.

As to the second factor, Defendants have adequately shown that they will be prejudiced if they are unable to consult the metadata of the relevant photographs to determine when they were created and/or sent.  As to the third factor, Plaintiff was warned in the February 12 Order that noncompliance could result in the exclusion of evidence.  And as to the fourth factor, the Court finds that the sanctions requested by Defendants are appropriate and no more drastic than necessary to address the conduct at issue.  Despite a court order and specific representations that Plaintiff would seek technical assistance to ascertain whether she possessed native copies of the

relevant photographs, Plaintiff not only failed to provide clear information regarding the required inquiry but made apparent misrepresentations regarding the actions and findings of her IT expert.

For all of the reasons set forth above, the Court concludes that sanctions are appropriate to address Plaintiff's noncompliance with Paragraph (3) of the February 12 Order.  Accordingly, the Court PROHIBITS the introduction of the photographs identified by Defendants in connection with Paragraph (2)(e) of the December 5 Order into evidence, *except for* photographs produced in a native format containing metadata.

**E.      Failure to Produce Complete Sets of Text Messages Discussing Mr. LoCastro**

Defendants' fourth request for sanctions pertains to Paragraph (4)(c) of the February 12 Order, which required Plaintiff to produce text messages retrieved from her cellular phone "that refer to Defendant Locastro" by February 14, 2025.  (ECF Doc. 51, p. 2; *see* ECF Doc. 82-1, pp. 9-11.)  Prior to that order, Defendants had advised the Court in the February 6, 2025 joint report that Plaintiff testified at her first deposition to having "proof" in the form of "text messages" showing that she reported Mr. LoCastro's sexual harassment to certain coworkers, but had not produced any such proof.  (ECF Doc. 46, p. 4 (citing *id.* at pp. 6-12).)  Plaintiff advised the Court in the same joint report that she had "hired an IT firm (Mr. PC) to access additional text messages and communications from her private cell phone with respect to Angelo LoCastro," which she would produce the next day, but objected to producing "private, confidential, and irrelevant communications between Plaintiff and uninterested third parties."  (*Id.*)  On February 14, 2025, Plaintiff advised Defendants and the Court that "voluminous" responsive text messages and photographs had been produced, attached to Mr. Wolanzyk's report.  (ECF Doc. 56, p. 3.)

Defendants now assert that two sets of the text messages produced by Plaintiff were incomplete—those between Plaintiff and coworker "Brittany" and those between Plaintiff and

her ex-fiancé Mr. Toro—and that Plaintiff also failed to produce any text messages between Plaintiff and her current fiancé Mr. Deniro.[11]  (ECF Doc. 82-1, pp. 9-11.)  While Plaintiff was ordered to produce all of the texts on her cell phone "that refer to Mr. Locastro" (ECF Doc. 51, p. 2), Defendants explain that Plaintiff selectively produced only those specific, individual text messages within a chain that contain the word "Angelo" while excluding the surrounding text messages that are necessary to provide context for the exchanges (ECF Doc. 82-1, pp. 9-10 (citing ECF Docs. 82-11, 82-12)).  Defendants argue that this selective production is incomplete and violates the Court's order.  (*Id.* at p. 10.)  In so arguing, they highlight Plaintiff's deposition testimony in December 2024 that she had "proof" in the form of "text messages" that she had not produced because she had not been asked for it, and her further testimony in January 2025 that she had not looked for relevant text messages between her and Mr. Toro since the prior deposition because she had not had the time.  (*Id.* at pp. 10-11.)  Based on Plaintiff's "continued refusal to look for and produce these documents," Defendants argue that she "should be precluded from introducing testimony that she reported Mr. LoCastro's actions to anyone as unwanted while she was employed at 717 Credit Union."  (*Id.* at p. 11.)

In response, Plaintiff explains that she "produced all text messages explicitly referencing 'Angelo'" because she interpreted the Court's order "to mean direct mentions rather than the surrounding general context."  (ECF Doc. 83-1, p. 5.)  Once she understood that broader production was expected, she claims she "promptly supplemented her responses and expressed her continued willingness to review and produce any additional relevant material if necessary." (*Id.*)  She argues that sanctions would therefore "unjustly punish [her] for what amounts to, at most, a technical misunderstanding promptly addressed upon clarification."  (*Id.*)  Despite

---

[11] Defendants also assert that Plaintiff failed to produce the text messages between herself and Mr. Toro by the February 14, 2025 deadline, instead producing them weeks later.  (ECF Doc. 82-1, p. 10.)

Plaintiff's explicit representations that she cured the inadequate production, she does not supply supporting evidence and Defendants state in reply that she did not produce additional materials. (ECF Doc. 88, pp. 4-5.) This is unfortunately consistent with the series of other broad, unsupported statements and outright misrepresentations offered by Plaintiff in response to Defendants' requests for sanctions. The documents before the Court are consistent with Defendants' description, listing a series of individual text messages that contain the word "Angelo" without including the surrounding text messages necessary to provide context to the listed text messages. (*See* ECF Docs. 82-11 (Brittany messages), 82-12 (Toro messages).)

Looking at the first factor of the sanctions analysis, it is again clear both that Plaintiff has violated this Court's orders and has not met her burden to show that the failure was the result of inability rather than willfulness, bad faith, or fault. After failing to bring her cellular phone to her December deposition for review as ordered in Paragraph (3)(b) of the December 5 Order, blatantly admitting at both of her depositions that she had not made the time to locate or produce relevant text communications, Plaintiff finally engaged an IT expert at the close of discovery to produce a limited group of text messages—those "that refer to Defendant Locastro"—as ordered in Paragraph (4)(c) of the February 12 Order, but interpreted the language of the Court's order in a way that was so limited as to render the produced text messages almost useless. She then represented to this Court that she had supplemented her production to cure this failing, but did not supply supporting evidence; Defendants deny that she provided the supplemental production. In this context, and in the context of Plaintiff's overall pattern of behavior, the Court finds Plaintiff has not met her burden and the record supports a finding that she acted in bad faith.

As to the second factor, the Court agrees that Defendants' ability to defend themselves against Plaintiff's self-serving testimony that she reported Mr. LoCastro's alleged behavior to

others is undermined by Plaintiff's failure to produce complete and verifiable documentation of her text communications as required by this Court's orders.  (*See* ECF Doc. 82-1, p. 2.)  As to the third factor, Plaintiff was warned in the February 12 Order that noncompliance could result in the exclusion of evidence.  And as to the fourth factor, the Court finds that the sanctions requested by Defendants are generally appropriate and no more drastic than necessary to address the conduct at issue.  After repeated, unexcused delays in producing relevant text messages, Plaintiff finally produced a largely unusable list of text messages that failed to comply with the requirements of this Court's order, then compounded the error first by failing to cure the inadequate production and second by apparently misrepresenting to this Court that she had produced the additional documents necessary to correct the error.

For the reasons set forth above, the Court concludes that sanctions are appropriate to address Plaintiff's noncompliance with Paragraph (3)(b) of the December 5 Order and Paragraph (4)(c) of the February 12 Order.  Accordingly, the Court PROHIBITS the introduction of evidence (including testimony) of Plaintiff's text communications with others regarding Mr. LoCastro's actions, *except for* text communications produced to Defendants in their entirety under Paragraphs (4)(a) and (4)(b) of the February 12 Order.[12]

## F.    Failure to Produce Certain Photographs Previously Shared with Mr. LoCastro

In addition to sanctions for failure to obey court orders under Rule 37(b)(2), Defendants also seek sanctions for alleged spoliation of evidence, which is governed by Rule 37(e).  (ECF Doc. 82-1, pp. 11-13.)  Specifically, Defendants focus on explicit photos of Plaintiff that she admittedly shared with Mr. LoCastro, but which she testified she deleted from both her cellular

---

[12] Defendants have not challenged the adequacy or completeness of Plaintiff's production of "text messages in which Defendant Locastro is a party to the communication" and "text messages in which Samantha Katsares is a party to the communication" pursuant to Paragraphs (4)(a) and (4)(b).  (ECF Doc. 51, p. 2.)

telephone and the cloud after she filed the present lawsuit.  (*Id.*; *see* Dec. Nielsen Depo., 168:9-170:23.)  In her December 2024 deposition, after being asked about explicit photos she had shared with Mr. LoCastro, Plaintiff had the following exchange with defense counsel:

Q.  Do you still have those photos on your phone?

A.  No.

Q.  When did you delete those?

A.  A long time ago.  I'm not really sure.  I wanted all of that stuff – I didn't want to – I didn't want my kids to look at my phone and look at it or anything like that.  So I kind of just got rid of them all.

Q.  Okay.  Was that before or after you filed the lawsuit?

A.  Probably after.

Q.  And did you realize that those would be very important images to have to prove and establish your case?

A.  No, I did not.

Q.  So you deleted them after you filed suit?

A.  Uh-huh.

Q.  You said that there was a backup to the cloud.  Did you go then to the cloud and delete them from the cloud as well?

A.  Yes.

Q.  And when you said earlier that you have every single picture and text and photo that was exchanged, that's not true then?

A.  I didn't say that.

Q.  . . . Tell me what you did say.

A.  Text and message that was ever sent.

Q.  Okay.  But the pictures you deleted?

A.  Right.

Q.  So at what time did you produce this picture?

28

> A.    I couldn't tell you the time frame. If he produced it off of his phone, he would know.
>
> Q.    Did you give the picture to your attorney?
>
> A.    No. I didn't have it saved after I gave her all kinds of pictures. I wasn't aware that pictures of me would be asked for considering –
>
> Q.    Considering this is a sexual harassment case, you didn't think the pictures that you sent naked and nude of yourself would be relevant?
>
> A.    No. I would admit to sending them. I have no issue with that. I just didn't think that it would be something that would be needed.

(*Id.* at 169:6-170:23.)

In the February 6, 2025 joint status report, Defendants advised the Court of Plaintiff's admitted deletion of the "sexual/semi-nude photographs of herself" after filing suit, and argued that the deletion of the native files eliminated evidence that may have allowed Defendants to establish when the photographs were taken and whether they were sent to others during the same time frame. (ECF Doc. 46, p. 4.) Plaintiff argued in response, contrary to her own testimony, that she "did not destroy anything after suit was filed, but she may have deleted photos of Defendant LoCastro prior thereto because they were upsetting to her." (*Id.* at p. 5.)

In Paragraph 6 of the February 12 Order, the Court ordered Plaintiff to "produce any of the photographs that she testified she previously shared with Defendant Locastro but later deleted . . . *and/or* any evidence of when such photographs were deleted." (ECF Doc. 51, p. 2 (emphasis added).) On February 14, 2025, Plaintiff represented to the Court that she:

> has produced all the photographs she has, including those from her iCloud back up. Whatever photo(s) she may have deleted were from Defendant Angelo LoCastro himself who should have had them as well since he was the one who had sent them to her. Plaintiff has not deleted photo(s) since this case was filed. Please see the plethora of messages/photos dating back to 2010 which are attached to the report of Mark Wolanzyk that is forwarded herewith to the Defendants.

(ECF Doc. 56, pp. 3-4 (emphasis added).)  Other than making broad representations that are contrary to Plaintiff's sworn testimony, Plaintiff did not provide further evidence or information to specifically establish if or when the relevant photographs were deleted.

Defendants assert that the evidence shows "clear, intentional spoliation of evidence" and argue that the metadata from the destroyed photographs is "highly relevant to this suit, which is based primarily on such photographs being exchanged between the parties." (ECF Doc. 82-1, p. 13.)  They therefore ask the Court to exclude from evidence "any and all provocative or sexual photographs exchanged between the parties." (*Id.*)

Plaintiff argues in response—without citing to supporting evidence, and contrary to her own deposition testimony—that she "testified candidly and consistently that she deleted certain personal photographs for privacy reasons, well before any litigation hold or duty to preserve had arisen." (ECF Doc. 83-1, p. 5.)  She also argues that her testimony and "subsequent clarifications" show her "honesty and a complete absence of any improper motive or intent to conceal evidence." (*Id.*)  She therefore argues that "Defendants' demand for a severe and punitive sanction is based entirely on speculation and unsupported in law or fact." (*Id.* at p. 6.)

Before imposing sanctions for spoliation under Rule 37(e)(1), this Court must consider: whether Plaintiff had a duty to preserve the evidence at the time of the loss; whether she took reasonable steps to preserve the evidence; whether the evidence can be restored or replaced through additional discovery; and whether Defendants suffered prejudice resulting from the loss of the evidence.[13]  *See* Fed. R. Civ. P. 37, 2015 Advisory Comm. Note.  Plaintiff had a "duty to

---

[13] A finding of intent is not necessary to award sanctions under Rule 37(e)(1), which requires only a showing of prejudice resulting from the loss of the relevant evidence.  Fed. R. Civ. P. 37(e)(1).  Rule 37(e)(1) permits an award of sanctions that is "no greater than necessary to cure the prejudice." *Id.*  More significant sanctions—like adverse inferences, dismissal, or default judgment—are available under Rule 37(e)(2), which requires a finding that the non-moving the party "acted with intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e)(2).  To impose sanctions under Rule 37(e)(2), courts need not "find prejudice to the party deprived of the

preserve" the evidence if she had "'notice that the evidence [wa]s relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *Goetz*, 531 F.3d at 459 (citation omitted).

According to Plaintiff's own testimony, she deleted explicit photographs she had previously sent to Mr. LoCastro from her cellular phone "[p]robably after" she filed the present lawsuit. (Dec. Nielsen Depo. 169:8-16.) Knowing that the photos were backed up to the cloud, she also deleted them from the cloud. (*Id.* at 169:21-170:1.) When asked about her prior testimony that she had preserved all of her prior exchanges with Mr. LoCastro, she clarified that she had preserved every "[t]ext and message that was ever sent," but that she had deleted the attached photos. (*Id.* at 170:2-10.) Plaintiff deleted those photos despite having filed the present lawsuit, in which she asserts claims of sex discrimination and a hostile work environment by Mr. LoCastro based in part on allegations that Mr. LoCastro "demanded sexually explicit pictures from [her]" and sent her "unsolicited, sexually explicit picture[s]." (ECF Doc. 1, p. 3.) In this context, it is clear that Plaintiff had a duty to preserve the evidence at the time it was destroyed.

The unsupported assertions by Plaintiff's counsel that the photos were deleted "well before any litigation hold or duty to preserve had arisen" do not change this analysis. Despite Plaintiff's repeated discovery delays, noncompliance with Court orders, and the expiration of the discovery period, this Court nevertheless provided one more opportunity for Plaintiff to produce "any evidence of when such photographs were deleted" in Paragraph 6 of the February 14 Order. (ECF Doc. 51, p. 2.) Plaintiff's only response to that opportunity was an unsupported statement by counsel, contrary to Plaintiff's sworn deposition testimony, that "Plaintiff has not deleted photo(s) since this case was filed." (ECF Doc. 56, p. 4.) Given that the only evidence before

---

information." Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. Since Defendants have not requested an adverse inference, adverse jury instruction, or dismissal, this Court need not address the Rule 37(e)(2) standard herein.

this Court reflects that Plaintiff intentionally deleted all copies of the explicit photos of herself "[p]robably after" filing this lawsuit, while preserving every "[t]ext and message that was ever sent," the Court finds Plaintiff had a duty to preserve the evidence at the time of its loss and did not take reasonable steps to preserve it. Fed. R. Civ. P. 37(e)(1).

The next consideration under Rule 37(e)(1) is whether the evidence can be restored or replaced through additional discovery. While Plaintiff represents that she has produced a "plethora of messages/photos dating back to 2010" (ECF Doc. 56, p. 4), she does not state that she produced the specific photos of herself that she previously admitted to deleting. Instead, she suggests she may have deleted photos of Mr. LoCastro, which Mr. LoCastro should have "since he is the one who had sent them to her." (*Id.*) Absent evidence to the contrary, this Court therefore finds that Plaintiff has not and/or cannot restore the photos that she admitted to deleting in her December 2024 deposition.

The final consideration under Rule 37(e)(1) is whether Defendants suffered prejudice resulting from the loss of the evidence. When assessing whether Defendants suffered prejudice, this Court's evaluation must "include[] an evaluation of the [lost] information's importance in the litigation." Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. Here, Defendants assert that the metadata from the deleted, explicit photographs of Plaintiff is "highly relevant" because this lawsuit "is based primarily on such photographs being exchanged between the parties." (ECF Doc. 82-1, p. 13.) They argue that the metadata would aid Defendants in establishing a reliable timeline, including determining whether Plaintiff exchanged the relevant photographs with Mr. LoCastro before she was employed at 717 Credit Union and/or during the time she agreed that her relationship with Mr. LoCastro was consensual. (*Id.* at pp. 8-9.) The Court agrees that Defendants suffered prejudice resulting from the deletion of the relevant photographs.

As a sanction for spoliation under Rule 37, Defendants ask the Court for a broad order excluding from evidence "any and all provocative or sexual photographs exchanged between the parties." (*Id.* at p. 13.)  They offer little explanation for the scope of the proposed sanction despite their assertion that the underlying case "is based primarily on such photographs being exchanged between the parties." (*Id.*)

Under Rule 37(e)(1), this Court may only impose sanctions that are "no greater than necessary to cure the prejudice" suffered by Defendants due to the destruction of the relevant evidence.  Under this standard, the Court finds the proposed sanction is greater than necessary to cure the prejudice to Defendants.  First, it must be noted that the Court has ordered in Section III.D., *supra*, that Plaintiff be prohibited from introducing those photographs that she previously produced as copies or screenshots into evidence unless the photos were also produced in a native format containing metadata.  In that context, and also considering that Defendant LoCastro was a party to the relevant exchanges of photographs, the Court finds a permissive adverse-inference instruction to be a more appropriate sanction, and a sanction that is no greater than necessary to cure the prejudice resulting from Plaintiff's deletion of her explicit photographs after the start of this litigation.  *See EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 403 (6th Cir. 2020) (finding permissive adverse-inference instructions to be appropriate sanctions under Rule 37(e)(1) because they are "merely permissible, telling the jury what they 'may' infer"); Fed. R. Civ. P. 37, 2015 Advisory Comm. Note (outlining potential measures to cure prejudice under Rule 37(e)(1), including "permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument"); *see also Schnatter v. 247 Grp., LLC*, No.

320CV00003BJBCHL, 2022 WL 2402658, at *17 (W.D. Ky. Mar. 14, 2022) (imposing a permissive inference jury instruction and collecting supporting cases).

For the reasons set forth above, the Court concludes that sanctions are appropriate to address Plaintiff's failure to preserve evidence relevant to this lawsuit in violation of Federal Rule of Civil Procedure 37(e)(1), but that the sanctions requested by Defendants are greater than necessary to cure the prejudice they suffered.  Accordingly, the Court ORDERS that Defendants may present evidence at trial to show that Plaintiff deleted explicit photographs she sent to Mr. LoCastro when she was under a duty to preserve that evidence for this litigation, and that a permissive jury instruction may be entered to inform jurors of their ability to draw an adverse inference from those actions at their discretion.

## G.     Request for Attorney's Fees

Although they do not offer substantive argument on the issue, Defendants include in the list of sanctions requested at the conclusion of their Motion a request for "reasonable attorney fees incurred by Defendants in repeatedly pursuing" the requested documents.  (ECF Doc. 82-1, p. 13.)  Neither party addresses the merits of the request for attorney's fees in their argument. Ordinarily, this Court would find similarly underdeveloped requests for relief to be waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal quotation marks and alterations omitted)).  However, the Federal Rules of Civil Procedure provide that sanctions imposed under Rule 37(b) "must" include an order that "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" except where "the failure

34

was substantially justified or other circumstances make an award of expenses unjust." Fed. R.

Civ. P. 37(b)(2)(C). But since neither party has addressed the relevant considerations, and since

Defendants have failed to submit documentation appropriate to support an award of attorney's

fees, this Court cannot make the determinations required under Rule 37(b)(2)(C). Accordingly,

Defendants' request for attorney's fees in connection with the pending Motion for Sanctions is

denied without prejudice.

## IV.     Conclusion

For the reasons set forth above, the undersigned finds that sanctions are warranted against

Plaintiff pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) and therefore PROHIBITS the

introduction of the following into evidence:

- Evidence (including testimony) regarding Plaintiff's job searches in support of Plaintiff's lost wages claim, *except for* job searches that are substantiated by documentary evidence, such as Indeed or Zip Recuter printouts and other evidence relating to Plaintiff's confirmed employment. Plaintiff's reconstructed job search list (ECF Doc. 82-9) is not sufficient evidence to substantiate any job searches.

- Evidence (including screen shots and testimony) concerning Plaintiff's social media posts or communications with or about Mr. LoCastro on Instagram, Facebook, Facebook Messenger, or Snapchat, *except for* social media posts or communications that Plaintiff produced to Defendants in their native format.

- Photographs identified by Defendants in connection with Paragraph (2)(e) of the December 5 Order, *except for* photographs that were produced in a native format containing metadata.

- Evidence (including testimony) of Plaintiff's text communications with others regarding Mr. LoCastro's actions, *except for* text communications produced to Defendants in their entirety under Paragraphs (4)(a) and (b) of the February 12 Order.

The Court further finds that sanctions are warranted under Federal Rule of Civil

Procedure Rule 37(e), and accordingly ORDERS that Defendants may present evidence at trial to

show that Plaintiff deleted explicit photographs she sent to Mr. LoCastro when she was under a

duty to preserve that evidence for this litigation, and that a permissive jury instruction may be

entered to inform jurors of their ability to draw an adverse inference from those actions at their

discretion.  Defendants' underdeveloped request for attorney's fees is denied without prejudice.


January 15, 2026


/s/Amanda M. Knapp
AMANDA M. KNAPP
United States Magistrate Judge


36