PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MANDY NIELSEN, | ) | CASE NO. 4:24-CV-00579 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| SEVEN SEVENTEEN CREDIT UNION, INC. *et al.*, | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | [Resolving ECF Nos. 69, 70] |
| Defendants. | ) | |

The Court considers Defendants' Motions for Summary Judgment under Federal Rule of Civil Procedure 56. *See* ECF Nos. 69, 70. Because there are no genuine disputes of material fact and for the reasons herein, both Motions are granted.

### I. INTRODUCTION

**A. HISTORY**

Plaintiff Mandy Nielsen met Defendant Angelo Locastro in 2010 when they worked together at PNC Bank in Northeast Ohio. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID #: 1283:10–14. Within a year, they began a flirtatious relationship in which they exchanged sexually explicit photographs *via* iMessage and Snapchat. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 493:13–95:15; Locastro Dep. Tr., ECF No. 73–3 at PageID ##: 1427:19–30:24. They subsequently left PNC, but reunited a few years later as colleagues at Cortland Bank. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID #: 1397:3–16. In 2017, Defendant Locastro moved to a new position at Defendant 717 Credit Union. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID #: 1281:12. On March 15, 2018, Plaintiff joined him there. *See* ECF No. 69 at PageID

(4:24-CV-00579)

#: 435. She listed Defendant Locastro as a professional reference when she applied for the job, and their coquettish relationship continued. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 491:7–9. Although the titles and timelines are muddied, Plaintiff and Defendant Locastro were both in separate relationships—him, married with children; her, intermittently engaged—throughout these digital trysts. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID #: 1278:3–10.

On May 17, 2020, Plaintiff was promoted to "member experience specialist" (*i.e.*, salesperson) in a new department with Defendant Locastro as her direct supervisor. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID ##: 1317:13–18:1. On October 6, 2022, an anonymous whistleblower—not Defendant Locastro—reported to Defendant 717's human resources department that Plaintiff routinely arrived at work late, left work early, and took extensive and excessive lunch breaks. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 746, ¶ 12; ECF No. 69 at PageID #: 435–36. In response, Defendant 717 audited Plaintiff's time for the working weeks of September 19 and 26, 2022. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 746, ¶ 13. The audit revealed that Plaintiff worked only 33.7 hours and 34.10 hours each week, respectively, despite being required to maintain 40 hours as a salaried at-will employee. *See* Time Audit, ECF No. 69–6, Ex. E at Page ID ##: 751–65; Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 746, ¶ 13.

Based on the audit results, Ryan Hough (Defendant 717's senior vice president of human resources) fired Plaintiff for "time theft" on November 7, 2022. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 746, ¶ 14; Termination Letter, ECF No. 69–5, Ex. D at Page ID ##: 749–50. At the time, he was unaware of any sexual harassment or sexual discrimination allegations by Plaintiff against Defendant Locastro. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 746, ¶ 15; Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 516:24–17:4. Although Defendant Locastro

2

(4:24-CV-00579)

was present when Hough fired Plaintiff, he played no role in the decision and had no notice beforehand. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 747, ¶ 18–19. Plaintiff was escorted from the premises after a contentious termination. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 747, ¶ 18–19.

A few months later, Defendant 717 learned—*via* an appeal letter to the Ohio Unemployment Compensation Review Commission—that Plaintiff now alleged sexual harassment against Defendant Locastro. *See* Hough Aff., ECF No. 69–4, Ex. C. at Page ID #: 747, ¶ 23; Appeal Letter, ECF No. 69–8, Ex. G at Page ID ##: 770–72. She contends that he first began sexually harassing her in 2020 while she was being "coached" for the new sales position. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 500:12–19. She says she "was subjected to unwarranted sexual advances from [Defendant] Locastro, which included unsolicited physical contact such as kissing, fondling, and other forms of physical harassment," alongside the ongoing exchange of "sext" messages. *See* ECF No. 1 at PageID #: 2, ¶ 12.

Plaintiff says that no sexual harassment occurred during their relationship from 2010 to 2020, but that it began around May 17, 2020 (her promotion) and continued until November 7, 2022 (her termination.) *See* Nielsen Dep. Tr., ECF No. 70–5 at PageID #: 916:6–10. She claims his conduct became unwanted around when she reunited with her fiancé and "didn't want to have that in my conscience anymore." *See* Nielsen Dep. Tr., ECF No. 70–5 at PageID ##: 916:21–17:3. She says, without specification, she did not report the allegations to Defendant 717 during or after her tenure there because she "was afraid of retaliation[.]" Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 515:10. She claims she told friends and coworkers about the unwanted attention from Defendant Locastro, including her former friend/fiancé Matt Toro, but produced no

3

(4:24-CV-00579)

evidence to corroborate that claim. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 702:17–03:1.

After an internal investigation, Defendant Locastro was terminated by Defendant 717 due to Plaintiff's allegations. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 572:13–25. His view is that no sexual harassment occurred, but that he was duped by Plaintiff and "got sucked into "[a] consensual friendly relationship" wherein "you know . . . she was continuously sending pictures[.]" Locastro Dep. Tr., ECF No. 73–3 at PageID #: 1427:19–24. He claims that, prior to her termination, Plaintiff asked him to leave his wife to be with her, but he refused. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID ##: 1521:20–22:1. Plaintiff's former colleagues believe that she was a willing participant in the relationship. Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 579:1–4.

Plaintiff admits that "no, I don't have proof of anything. I don't have documentation of anything. I don't have a witness to anything. But it's the way that I felt he treated me." Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 589:3–24. She admits she "might have" told coworkers— in reference to Defendant Locastro—that "[i]f I'm going down, I'm taking him down too." Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 567:21–23. She admits—referring to Defendant Locastro—that "[h]e didn't really threaten me, *per se*, in words, but he would like seem that way to me[.]" Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 585:7–9. She admits that Defendant Locastro never threatened to fire or demote her if she stopped sending him explicit photographs. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 636:25–37:9. She admits she has zero evidence to indicate she wanted their relationship to end, or that she no longer wanted to exchange explicit pictures. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 636:25–37:9.

(4:24-CV-00579)

B. Proceedings [1]

After exhausting her administrative requirements with the United States Employment Opportunity Commission, Plaintiff sued Defendants in the Northern District of Ohio on March 28, 2024 on six causes of action. *See* ECF Nos. 1, 50–2. Both Defendants timely answered. *See* ECF Nos. 13, 14. After some procedural fallout, just three claims remain:[2] (Count I) sex discrimination under 29 U.S.C. § 2000e *et seq.*; (Count II) hostile work environment under Title VII of the Civil Rights Act of 1964; and (Count IV) discrimination on the basis of sex under Ohio Rev. Code § 4112. *See* ECF No. 1. In March 2025, both Defendants moved for summary judgment under Fed. R. Civ. P. 56. *See* ECF Nos. 69, 70. The Motions are opposed and fully briefed. *See* ECF Nos. 74, 78, 79.

C. Sanctions

In response to string of disruptions, the Court referred discovery disputes to the assigned Magistrate Judge on three separate occasions. The Magistrate Judge found sanctions appropriate and prohibited Plaintiff from introducing as evidence: (1) any job-search evidence, unless supported by contemporaneous documentation; (2) any social-media posts or communications involving Defendant Locastro, unless produced in native format; (3) any photographs lacking native-format metadata; and (4) any text messages about Defendant's Locastro's conduct, unless produced in full as required by prior orders. Defendants were also given leave to present evidence that Plaintiff deleted explicit photographs despite a duty to preserve them, and that a

---

[1] This case has a protracted procedural history due to Plaintiff and her counsel's inability to adhere to the mandates of the Federal and Local Rules of Civil Procedure.

[2] Defendant Locastro moved for judgment on the pleadings as to Counts V and VI. *See* ECF No. 23. The Court granted Plaintiff's subsequent motion to dismiss Counts V and VI, and Plaintiff dismissed Count III under Fed. R. Civ. P. 41(a). *See* ECF Nos. 25, 57.

(4:24-CV-00579)

jury may be instructed to permissibly draw an adverse inference from that deletion. Because of her bad-faith conduct and the sanctions therefrom, Plaintiff's expert report from Dr. Deborah Koricke, see ECF No. 76, text messages from Brittany G. and Matt Toro, see ECF Nos. 82–11, 82–12, and a purported text message from Ryan Munno, see ECF No. 50–6, are excluded from consideration as outlined in the sanctions order. See ECF No. 91.

## II. LAW

### A. SUMMARY JUDGMENT

Summary judgment is a procedural device allowing a district court to resolve civil suits, claims, or issues without trial. See Fed. R. Civ. P. 56. It is appropriate when the pleadings, discovery, and disclosed materials reveal no genuine dispute of material fact and entitle the moving party to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). A fact is "material" if its resolution will affect the outcome of the litigation. See *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" if the evidence would permit a reasonable jury to find the non-moving party entitled to a favorable verdict. See *id.* Once raised, the burden shifts to the non-moving party to demonstrate that there is a genuine dispute of material fact precluding summary judgment. On summary judgment, district courts view the evidence in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The non-moving party cannot rely on pleadings alone: they must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); see *Guarino*, 980 F.2d at 403. They must support their factual assertions by citing specific record materials or showing the opponent lacks admissible evidence. See Fed. R. Civ. P. 56(c).

### B. TITLE VII

(4:24-CV-00579)

1. **Sex Discrimination**

Under Title VII of the Civil Rights Act of 1964, "[i]It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case of sex discrimination, a plaintiff must show that (1) they are a member of a protected group; (2) they were subjected to an adverse employment action; (3) they were qualified for the position; and (4) they were replaced by another person outside of a protected class, or a similarly situated non-protected employee was treated with more favor. See *Corell v. CSX Transp., Inc.,* 378 Fed.Appx. 496, 501 (6th Cir. 2010) (citing *Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004).

2. **Sexual Harassment**

The Sixth Circuit recognizes two types of Title VII-actionable workplace sexual harassment: *quid pro quo* and hostile work environment. See *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 182 (6th Cir. 1992).

   a. *Quid Pro Quo*

To establish a *prima facie* claim of *quid pro quo* harassment, the plaintiff must show that (1) they are a member of a protected class; (2) they were subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was on the basis of sex; (4) submission to the unwelcome advances was an express or implied condition for receiving job benefits, or the refusal to submit to the sexual advances resulted in a tangible job detriment; and (5) the existence of *respondeat superior* for the employer. See *Hollar v. RJ Coffey Cup*, LLC, 505 F. Supp. 2d 439, 451 (N.D. Ohio 2007).

7

(4:24-CV-00579)

### b. Hostile Work Environment

To establish a *prima facie* claim of hostile work environment harassment, the plaintiff must show that (1) they are a member of a protected class; (2) they were subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) the existence of *respondeat superior* liability for the employer. *See Clark v. United Parcel Serv.,* Inc., 400 F.3d 341, 347 (6th Cir. 2005) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999)).

While both *quid quo pro* and hostile work environment harassment are provable through direct or circumstantial evidence, claims based on circumstantial evidence alone must be analyzed under the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). Even so, because Plaintiff in the instant case (a) failed to make a sufficient *quid pro quo* harassment claim *ab initio*, and (b) abandoned her hostile work environment harassment claim, no burden-shifting analysis is necessary.[3] *See McDonnell Douglas Corp.*, 411 U.S. at 792.

### III. DISCUSSION[4]

---

[3] Even if the Court engaged in such analysis, Plaintiff has been sanctioned by the Court for egregious bad faith discovery violations and has produces insufficient evidence to avoid summary judgment.

[4] As indicative of the litigative tactics that have plagued this dispute, Plaintiff refused to stipulate any matters of fact. *See* ECF No. 69–13. Accordingly, the Court resolves these motions using, *inter alia*: transcripts of depositions of Plaintiff (ECF Nos. 69–2; 69–3); affidavit of Ryan Hough (ECF No. 69–4); Plaintiff's termination letter (ECF No. 69–5); Defendant 717's audit of Plaintiff's time (ECF No. 69–6); Plaintiff's phone records for November 2022 (ECF No. 69–7); Plaintiff's unemployment appeal letter (ECF No. 69–8); Defendant 717's employee handbook and Plaintiff's acknowledgment thereof (ECF Nos. 9, 10); Plaintiff's psychotherapy note (ECF No. 70–6); Defendant Locastro's responses to Plaintiff's interrogatories (ECF No. 83–5); Defendant 717's responses to Plaintiff's interrogatories; transcript of deposition of Ryan

8

(4:24-CV-00579)

Defendant Locastro seeks summary judgment on Counts I, II, and IV. *See* ECF No. 70 at PageID #: 842. He argues Plaintiff never asserted those three claims against him, but that even if she did, they still fail as a matter of law. *See* ECF No. 70. He is correct, and therefore entitled to summary judgment on all remaining counts.

The complaint seeks "judgment against the Defendant Credit Union only" on Counts I, II, and IV, "judgment against the Defendants Credit Union and Locastro, jointly and severally" on Count III, and "judgment against Defendant Locastro only" on Counts V and VI. *See* ECF No. 1 at Page ID ##: 7–8. Plaintiff's federal and state sex discrimination claims (Counts I and IV) and Title VII hostile work environment claim (Count II) come against Defendant 717 alone—not Defendant Locastro, who is only implicated under Counts III, V, and VI. *See* ECF No. 1. Counts II, V, and VI were previously dismissed with prejudice. *See* ECF Nos. 24, 25, 57. Consequentlly, no causes of action remain against Defendant Locastro, and thus he is entitled to judgment as a matter of law.

Defendant 717 seeks summary judgment on Counts I, II, and V. It argues that Plaintiff failed to adhere to employee handbook guidelines, that her sexual harassment claims fail as a matter of law, that it has an affirmative defense under the *Faragher-Ellerth* framework, and that it took reasonable care to prevent and correct any Title VII-violative conduct. *See* ECF No. 69 at Page ID ##: 443–52. Although its arguments are misaligned, Defendant 717 is likewise entitled to summary judgment on different grounds detailed below.

**A. COUNT I — FEDERAL SEX DISCRIMINATION**

---

Munno (ECF No. 73–1); transcript of deposition of Ryan Hough (ECF No. 73–2); transcript of deposition of Defendant Locastro (ECF No. 73–3).

9

(4:24-CV-00579)

Plaintiff claims Defendant 717 violated 42 U.S.C. § 2000e–2(a)(1), because "[it] ha[s] discriminated against Plaintiff on the basis of her gender (female)."[5] ECF No. 1 at PageID #: 4. Unfortunately, she misunderstands the substantive difference between sexual harassment and sexual discrimination, leading to a naked claim that cannot survive summary judgment. *See Friel v. Mnuchin*, 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020), aff'd, No. 20-2714, 2021 WL 6124314 (3d Cir. Dec. 28, 2021).

Under 42 U.S.C. § 2000e-2(a)(1), a federal sex discrimination claim requires Plaintiff to allege that she suffered a materially adverse employment action *because of* her sex. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Sexual harassment is "merely" a form of sex discrimination and thus actionable under Title VII, but only when the plaintiff can "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination because of sex*." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (emphasis original and added). "Judicial inquiry into the question whether a given instance of harassment constitutes sex-based discrimination is entirely separate from inquiry into whether the harasser's conduct was serious enough to constitute either *quid pro quo* or hostile environment harassment." *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). The two are synchronous yet separable.[6] *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment, even harassment

---

[5] Despite Plaintiff's additional failure to make the sex-gender distinction, the Court construes that she claims protected status as a female, not protected status based on gender identity. *Cf. Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 655 (2020).

[6] Sexual harassment that is "severe or pervasive enough to create a hostile environment . . . might be excluded from the coverage of [T]itle VII because it was not discriminatory on the basis of sex." *La Day*, 302 F.3d at 478 (cleaned up).

10

(4:24-CV-00579)

between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("In Title VII actions . . . it is important to distinguish between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code.") (cleaned up).  Plaintiff's allegations in Count I—both as pled and as defended in her response to the Motions at issue—describe only alleged sexual harassment, conduct that, even if true, supports a hostile work environment claim under Count II, not a sex discrimination claim under Count I.[7]

Although Counts I and II are pled individually, Plaintiff does not allege she was terminated, disciplined, denied promotion, or otherwise subjected to a tangible employment action because of her protected status, nor does she identify any similarly situated employees who were treated more or less favorably.  She provides no evidence that her termination in Count I was tied—however tenuously—with alleged sexual harassment in Count II.  To the extent she suffered any tangible employment detriment, her firing was unrelated to her relationship with Defendant Locastro and his alleged sexual harassment:

> **Q:**  Okay. And my question to you is, you have no evidence to show that [time theft] wasn't Mr. Hough's true reason for deciding to terminate you[?]
>
> **A:**  I guess I would have to have his line of questioning for that decision.
>
> **Q**:  I'm asking you, as you sit here today, do you have any evidence to indicate that [time theft] was not his reason for deciding to terminate your employment?

---

[7] In fairness to Plaintiff, sex-based discrimination is easy to infer in male-female harassment cases because the conduct typically involves proposals of sexual activity that would, in many cases, not be directed at someone of the same sex.  See *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

11

(4:24-CV-00579)

> **A:** I do not know.
>
> **Q:** Okay.  It is [Defendant 717]'s position that Ryan Hough had no knowledge of any of the allegations you made in your complaint at the time he decided to terminate your employment.  Do you have any evidence to the contrary?
>
> **A:** I do not.

Nielsen Dep. Tr., ECF No. 69–2 at PageID #: 531:7–21.

> **Q:**  Okay. So you have no reason to assert that it was the credit union's decision to terminate you in retaliation for anything to do with [Defendant] Locastro; correct?
>
> **A:** I don't have proof of that, no.

Nielsen Dep. Tr., ECF No. 69–2 at PageID #:539:15–19.

Plaintiff has failed to meet her burden of showing there is a genuine issue of material fact as to whether she was terminated from Defendant 717 for any reason other than time theft. Consequently, her sex discrimination claim in Count I fails as a matter of law.[8]

## B.  Count II — Federal Sexual Harassment

### 1.  Quid Pro Quo

The Parties expend admirable effort disputing whether there is a meritorious *quid pro quo* sexual harassment claim at stake.  A minor problem: Plaintiff failed to sufficiently allege *quid pro quo* harassment in her complaint.[9]  "A complaint states a claim when it alleges facts that, if

---

[8] Courts routinely dismiss sexual discrimination counts where the plaintiff labels the claim as discrimination but alleges only harassment.  *See* Bowman v. Shawnee State Univ., 220 F.3d 456, 463–64 (6th Cir. 2000) (holding that allegations of harassment, without evidence of an adverse employment action motivated by sex, cannot support a sexual discrimination claim).

[9] Defendant 717 recognizes that "[t]o the extent this allegation constitutes a *quid pro quo* sexual harassment claim against [Defendant 717], [it] is [still] entitled to summary judgment." ECF No. 69 at PageID #: 450.

(4:24-CV-00579)

true, make out a claim for relief that is plausible on its face, and that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hodges v. City of Grand Rapids,* 139 F.4th 495, 504 (6th Cir. 2025) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up). Plaintiff's complaint mentions *quid pro quo* harassment in just one paragraph among forty-eight, and even then, in a section separate from the causes of action:

> Despite her repeated efforts to reject Locastro's sexting, kissing, and fondling, the situation escalated to a quid pro quo harassment where Locastro conditioned Plaintiff's career advancement and job stability on her compliance with his sexual demands.

ECF No. 1 at PageID #: 3, ¶ 14. This claim finds no other lines of argument or support in the record. As held in *Twombly v. Bell Atl. Corp.*, the pleading standard of Fed. R. Civ. P. 8 does not require "detailed factual allegations," but still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting 550 U.S. 544 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). An allegation in a complaint cannot constitute a claim if it "tenders naked assertions devoid of further factual enhancement[.]" *Id.* (cleaned up). An *ipse dixit quid pro quo* allegation is insufficient to constitute a legal cause of action under *Twombly* and *Iqbal*.

Plaintiff tries to revive this allegation in her opposition to summary judgment with factual and legal contentions that are likewise unsupported in the record. Even if the Court considered *arguendo* her *quid pro quo* harassment claim, Plaintiff has not shown by any evidence other than base assertion that Defendant Locastro's conduct was unwanted or unwelcome:

> **Q:** . . . All of the documents that you produced so far, none of them indicate in any way that you wanted him to stop or you didn't want to send him pictures or anything to that effect?
>
> **A:** No. I don't believe any of them state that, no.

13

(4:24-CV-00579)

> **Q:** Okay. And likewise, there's no communications from him where he said that he would fire you or demote you if you didn't send a picture?
>
> **A:** No.

Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 636:25–37:9. On the contrary, Plaintiff admits that, on at least one occasion, she walked into Defendant Locastro's office uninvited and tried to kiss him, causing him to back away because he was in the middle of a work call. *See* Nielsen Dep. Tr., ECF No. 69–2 at PageID ##: 668:12–69:15. She also attempted to kiss Defendant Locastro on the dance floor at a company Christmas party, again prompting him to push her away. *See* Locastro Dep. Tr., ECF No. 73–3 at PageID #: 1433:11–20. These incidents cut against the elemental sufficiency needed for her claim to survive summary judgment.

Accordingly, because Plaintiff (a) failed to sufficiently plead a claim of *quid pro quo* harassment, (b) impermissibly tried to raise that claim for the first time in response to Motions for Summary Judgment, and (c) cannot demonstrate there is a genuine dispute of material fact as to whether Defendant Locastro's conduct was unwanted, Defendant 717 is entitled to judgment as a matter of law on Count II. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

2. **Hostile Work Environment**

For her hostile work environment sexual harassment claim, Plaintiff delves into more defensive detail. *See* ECF No. 1 at Page ID #: 5. Facing summary judgment, however, she makes the same mistake she made with her *quid pro quo* argument, but inverse: having sufficiently pled a hostile work environment claim in her complaint, she abandons that claim in her response in opposition to summary judgment. Put simply: the complaint was all hostile work environment, no *quid pro quo*; the response was all *quid pro quo*, no hostile work environment.

14

(4:24-CV-00579)

The Sixth Circuit's jurisprudence on abandonment of claims is clear: "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.,* 449 Fed.Appx. 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment).

Because Plaintiff failed to bring a sufficient *quid pro quo* harassment claim and abandoned her hostile work environment claim, Defendant 717 is entitled to judgment as a matter of law on Count II.  In the alternative, Plaintiff's claim fails as a matter of law because she cannot demonstrate that Defendant Locastro's conduct was unwanted.

## C.  COUNT V — STATE SEX DISCRIMINATION

Plaintiff alleges that Defendant 717 discriminated against her on the basis of sex in violation of Ohio Rev. Code § 4112.02(A).  Title VII sexual discrimination jurisprudence is analogous and applies to state sexual discrimination analysis under Ohio Rev. Code § 4112.02(A).  See *Vehar v. Cole Nat. Grp., Inc.*, 251 F. App'x 993, 1002 (6th Cir. 2007) (*citing Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio C.R. Comm'n.,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)).  Accordingly, the Court incorporates its analysis in Count I and, by the same logic, finds Defendant 717 entitled to judgment as a matter of law on Count III.

(4:24-CV-00579)

## IV.  CONCLUSION

Because there are no genuine disputes of material fact, Defendant 717 and Defendant Locastro are entitled to judgment as a matter of law.  Their Motions for Summary Judgment are granted on Counts I, II, and V.  A separate entry of judgment shall issue.

IT IS SO ORDERED.

| February 27, 2026 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |